# EXHIBIT D

STATE OF FLORIDA
COUNTY OF LEON

COMES NOW THE AFFIANT, ROBERT S. FRIEDMAN, WHO, UNDER THE PENALTY OF PERJURY, HEREBY SWEARS AND AFFIRMS AS FOLLOWS:

1. My name is Robert S. Friedman, and I have been a licensed Florida attorney since 1985. I currently serve as the Capital Collateral Regional Counsel for North Florida, and I have held that position since 2014.

2. During my tenure as Capital Collateral Regional Counsel-North (CCRC-North), my office represented Eric Branch during his post-conviction appeals. It was in my capacity as CCRC-North that I witnessed the execution of Mr. Branch at Florida State Prison on February 22, 2018. It was the first execution I have ever witnessed.

3. Prior to the execution, my office had made several requests regarding my witnessing of the execution. These requests included: 1) That I be allowed to bring a pen and paper into the execution chamber, 2) That a second witness from the legal team also be present as a witness, 3) That I have access to a telephone to contact Mr. Branch's legal team, and 4) That I or a member of our legal team be allowed to observe the IV insertion process. The first request regarding a pen and paper was granted, and the other three requests were denied. (See request and response attached as Exhibit 1).

4. On February 22, 2018, in accordance with Florida Department of Corrections' (FDOC) procedure, I arrived at the administration building of the Florida State Prison at 4:20 p.m. At 4:45 p.m., FDOC personnel made me give up my cell phone, as well as my own pad and pen, and they provided me with their own pad and two pencils. At 5:15 p.m. a FDOC official stated we were ready to leave the administration building and enter the prison. We entered the prison through security, and stood by a door waiting for a van until 5:40 p.m. Then, at 5:40 p.m., we were taken to the chapel, and stayed there until 6:30 p.m. At 6:32 p.m. we walked back to the door and got in the van and were driven to the execution chamber. From 4:45 p.m. on, I was unable to contact Mr. Branch's legal team, as I had no access to my cell phone. However, I observed at least one FDOC employee who was also a witness to the execution using a cell phone during the time the witnesses were confined to the chapel. It was only after the execution that I had access to my cell phone.

4. At 6:37 p.m. I was seated in the execution chamber in the second chair of the front row. Mr. Branch was strapped to the gurney in a vertical position. His hands were wrapped and bandaged tightly. I was able to see only the very tips of his fingers.

5. At 6:47 p.m. Mr. Branch gave a final statement, saying that Rick Scott and Pam Bondi should be the ones conducting the execution, instead of the prison officials in the chamber.

1

6. At 6:48 p.m. the execution officials stated the execution phase was to begin. Mr. Branch's legs were moving, his head was moving, and his chest was heaving. At 6:49 he screamed at the top of his lungs, then he yelled out "murderers." His body was shaking. For about a minute after he yelled out, his legs were moving. He appeared to be in obvious distress.

7. At 6:50 p.m., his chest was still moving. Between 6:50 p.m. and 6:52 p.m. his body was shaking and his chest was moving. The execution official grabbed him by the shoulders and shook him at this time. At 6:53 p.m., after the execution official had grabbed him and shook him, I still observed the same movements – his chest heaving and body shaking. At 6:54 p.m. I observed slight movement.

7. From 6:55 p.m. until 7:04 p.m. there was no movement. At 7:04 p.m. a person with a stethoscope came in and appeared to listen to Mr. Branch's heart. At 7:05, the same person shined a pen light in Mr. Branch's eyes. At 7:05 p.m., the execution official stated that the sentence had been carried out. The curtains closed at 7:06 p.m.

FURTHER AFFIANT SAYETH NAUGHT

_____
Robert S. Friedman

SWORN TO AND SUBSCRIBED TO before me this 7th day of March, 2018, by Robert S. Friedman, who is personally known to me, or produced the following identification

_____
NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires:



THERESA E. FARLEY
Commission # FF 159894
Expires September 15, 2018
Bonded Thru Troy Fain Insurance 800-385-7019

2

# EXHIBIT 1

Telephone:
(850) 487-0922



ROBERT FRIEDMAN
CAPITAL COLLATERAL REGIONAL COUNSEL
NORTHERN REGION

# OFFICE OF THE
# CAPITAL COLLATERAL REGIONAL COUNSEL
# NORTHERN REGION
1004 DeSoto Park Drive
Tallahassee, FL 32301

February 1, 2018

Warden Barry Reddish
Florida State Prison
P.O. Box 800
Raiford, FL 32083

Dear Warden Reddish,

    Our office has been appointed to represent Eric Scott Branch in his post-conviction proceedings, which necessarily include the death warrant stage we now find ourselves in. As counsel for Mr. Branch, we are duty bound to witness the execution, currently scheduled for Thursday, February 22, 2018 at 6:00 p.m. We have a number of requests regarding the witnessing of Mr. Branch's execution that we hope you will consider.

    Our first request is to allow our designated witness to bring a writing pad and pen into the observation room during the time the execution is taking place. It is our understanding that the members of the press present at executions have been allowed to have a notepad and writing instrument to record their observations as they take place. Additionally, we have been informed that the FDLE agent, whose obligation it is to record his/her observations, also has access to writing implementations to records their observations. We would request that whoever witnesses the execution from our office be afforded the same access to writing materials as the press and FDLE.

    Our second request is that a witness from the legal team be allowed access to a phone before and during the execution process. This would allow the witness to be apprised of the most up to date information regarding Mr. Branch's case. Additionally, should the execution go awry, it could be necessary for the witness in the observation room to contact the courts and/or legal team to stop the execution. We certainly understand that cameras are not allowed in the observation room, and we have no intention of taking pictures, nor are we requesting to do so, however, in the event an execution goes badly it is impossible for members of the legal team to take any action since the legal witness has no access to any communication device. It is also problematic that the witness from the legal team cannot remain in contact with attorneys outside the grounds of the prison during periods of delay. Communication between members of the team during this time is extremely important when critical legal decisions are being made and that can

only occur when access to a cellular device is allowed. The phone does not have to be physically on the witness, the witness just needs to be able to access the phone if they need to.

Along those same lines, our third request is to allow our office an additional witness, bringing the total of legal team witnesses to two. In the event that Mr. Branch's execution goes wrong, the presence of two legal witnesses will allow for one witness to leave and promptly alert the legal team and courts, while the other witness remains in the observation room.

Finally, our fourth request is that you allow one of our witnesses to be present and/or have unobstructed viewing during the IV insertion process. As I'm sure you're aware, this is a critical moment during the lethal injection process and any difficulties achieving venous access and/or errors in obtaining proper access would cause Mr. Branch severe pain, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. We are mindful that the identities of the execution team are kept secret under the law, but perhaps the IV insertion process can be observed via a video that is narrowly focused on the insertion sites, and as such would continue to shield the identities of the execution team members. Additionally, the attorney witness is an officer of the court, and therefore bound not to reveal the identity of any team member.

We appreciate the solemnity of this process, however, as legal representatives of Mr. Branch, we feel a responsibility to him, and others similarly situated, to be able to communicate effectively within the legal team before and during his execution. We hope you will respond favorably to our requests and we look forward to hearing from you.

Sincerely,

Kathleen Pafford
Assistant CCRC-N
Co-Counsel for Mr. Branch



Kathleen Pafford <kathleen.pafford@ccrc-north.org>

# Requests regarding Eric Branch execution

**Kathleen Pafford** <kathleen.pafford@ccrc-north.org>  Tue, Feb 6, 2018 at 11:31 AM
To: Barry.Reddish@fdc.myflorida.com
Cc: Stacy Biggart <stacy.biggart@ccrc-north.org>, "Godwin, Shawn" <shawn.godwin@fdc.myflorida.com>

Hello again,

I just wanted to add that we found out today Mr. Branch's spiritual adviser will not be attending the execution. Our understanding is that this leaves open one witness chair, which, as stated in our previous written request, we'd like to fill with a second witness from the legal team. If you have any questions, please feel free to contact me.

Thank-you,
Kathleen Pafford
[Quoted text hidden]



**FLORIDA DEPARTMENT of CORRECTIONS**

Governor
RICK SCOTT

Secretary
JULIE L. JONES

501 South Calhoun Street, Tallahassee, FL 32399-2500

http://www.dc.state.fl.us

February 15, 2018

Kathleen Pafford
Assistant CCRC-N
1004 DeSoto Park Drive
Tallahassee, FL 32301

Dear Ms. Pafford,

The Florida Department of Corrections (FDC) is in receipt of your letter dated February 1, 2018 regarding your request to FDC to waive several of the procedures in the January 4, 2017 lethal injection protocol (protocol). To summarize, you are requesting the following: a writing pad and pen during the execution, access to a phone during the execution, an additional witness (to be designated by CCRC), and to witness the IV insertion process. In conjunction with Warden Reddish, the Office of the General Counsel has reviewed each of your requests. We have no objection to CCRC's designated witness bringing a writing pad and a pencil.

FDC must respectfully decline your remaining three requests. The procedures in the protocol were developed from extensive discussion by FDC both at the Central Office and at the institutional level. As stated in the certification on the first page of the protocol, FDC's foremost objective is a humane and dignified death. In order to ensure FDC complies with its statutory duties pursuant to Chapter 922, Florida Statutes and to maintain the security of our institutions, FDC must adhere strictly to the procedures in the existing protocol and will only waive these procedures in exceptional circumstances. FDC has previously denied requests similar to those in your letter.

It is FDC's understanding that your client would like to waive the post-execution autopsy. Section 922.11(3), Fla. Stat. provides:

> (3) The body of the executed person shall be delivered to the medical examiner for an autopsy. After completion of the autopsy, the body shall be prepared for burial and, if requested, released to relatives of the deceased. If a coffin has not been provided by relatives, the body shall be delivered in a plain coffin. If the body is not claimed by relatives, it shall be given to physicians who have requested it for dissection or to be disposed of in the same manner as are bodies of prisoners dying in the state prison.

004

To comply with the above statute, the January 4, 2017 lethal injection protocol provides at Specific Procedure (13)(e):

(e) the inmate's body will be transported by the hearse attendants to the medical examiner's office in Alachua County for an autopsy.

The language in s. 922.11(3), F.S. in unambiguous and, through the use of the word "shall," requires FDC to deliver the body of the executed inmate to the medical examiner's office for an autopsy. Additionally, section 406.11, Fla. Stat., requires that autopsies be performed on any individual who dies in "any prison or penal institution." § 406.11 (1)(a)6., Fla. Stat. Because the autopsy requirement is in statute, FDC has no discretion with regards to the performance or waiver of an autopsy in this matter. Further, FDC cannot waive the provision relating to autopsies in the protocol as it would create a conflict with the existing statute.

Sincerely,

Ryan G. Padgett
Assistant General Counsel